Thank you judge. May it please the court, I'm Steve Maddox, counsel for the appellants. The district court clearly erred in finding Watson's proposed end-of-product to infringe This is because on the undisputed evidence of the product, natural product is not really at issue here in terms of what it is and isn't. There can't be infringement if the district court's instruction is applied properly or if the term inter-lipophilic matrix is properly applied. This case presents confusion for me at least at a number of different levels. But one of those is that you spend much more effort dealing with this as an infringement case. And it seems to me that perhaps what you're really getting to is really a question, a dispute on claim construction. Am I right about that or not? It is confusing in that it's a mixture. On the one hand it could be looked at as a claim construction issue. Did the court correctly construe inter-lipophilic matrix? Well if you had your own druthers, if you were writing on a clean slate, how would you construe it? This is a matter of claim construction now, moving away from infringement. Right. We could take the court's inter-lipophilic matrix construction and add to it the separate and distinct limitation that Watson had argued for below, which says that these matrices must be spatially and compositionally separate and distinct. If we construed it that way. Do you think the district court's construction allows it to be an inter-lipophilic matrix if it just contains a lipophilic substance or does it have to behave in a lipophilic manner? Well, the district court's construction as it reads says it just has to have some amount of a lipophilic substance in it. So if that's the case, then if you have a matrix that may have lipophilic substances in it somewhere and you can draw the lines, but it operates entirely in a hydrophilic manner, that would still infringe under the district court's claim construction in your view. Right. And that's why the construction is wrong, although it can be fixed by looking at and applying consisting of. If you take the district court's construction of matrix with anything lipophilic in it, if you just take that as it is for now, but when you get to the consisting of, you apply that correctly. The consisting of substances from the group consisting of, the Marcuse group, all lipophilic substances. At some level, the consisting of sort of takes care of it because the only substance of the lipophilic matrix has to be one of those lipophilic substances. So you're saying the inter-lipophilic matrix cannot have any hydrophilic aspect elements, molecules, nothing? That's correct. Even if it acts in a lipophilic manner and just may have trace hydrophilic substances? Yes, because of the consisting of in the Marcuse group. It says that. Now, if we didn't have the consisting of the Marcuse group and we were just focusing on, frankly, the common sense of it, which was in our constructions below, which is what has to be lipophilic, the matrix has to be lipophilic. The consisting of is the one prong of the portion, and then there's other substances. Why can't that other substance be a hydrophilic substance, as long as it doesn't affect the fact that the matrix as a whole operates in a lipophilic manner? The short answer to that is in the prosecution history. The claim as originally written had a consisting of for the lipophilic matrix and no consisting of for the hydrophilic and other excipients. Along the way, in response to some of the examiners' rejections, the claims were added, I'm sorry, from the groups consisting of. The other ingredients at clause C on the surface, on the face, apply to things other than the lipophilic ingredients and the hydrophilic ingredients talked about in A&E. I'm sorry, did that, you seem... Well, I'm a little confused as to why you're pressing that point, because it seems to me a much harder argument than just saying that the lipophilic matrix has to operate in a lipophilic manner, and it's okay if it contains trace hydrophilic substances. Well, let's hang on. We're not here arguing function today. That had been argued, but we didn't take that up on appeal, so we're not arguing how the lipophilic matrix has to function. Well, I mean, by its definition, a lipophilic matrix functions in a lipophilic manner. It can't be a lipophilic matrix if it functions in a hydrophilic manner, can it? It would be true that if you structurally have a lipophilic matrix, yes, it will conduct itself as a lipophilic matrix would, but the claims are to the apparatus. And we are just focusing, at least today, we're happy to discuss others, but on the lipophilic matrix, what it has to be consisting of according to the claim language. And I believe you mentioned earlier the district court at some point along the way said, well, in terms of what a lipophilic matrix can be, it can be anything that's got some lipophilic material in it. We happen to think that's not right. We've argued that. But in some sense, it's parsing out one too many times. In fact, the district court parsed out lipophilic from matrix, parsed that out from consisting of, but what we've got here is an inner lipophilic matrix structure that is then limited in what it can consist of. Well, am I wrong? Didn't the district court say, yes, we've got an entire inner matrix that's lipophilic because it said that just the magnesium stearate was the inner matrix, right? Right. So he essentially followed what you're saying. You just are disagreeing with how he applied it? Well, two things. He didn't follow his own claim construction of what matrix was. It's a homogeneous structure in all its volume. It started that way, but then quickly got tied up in the consisting of, sort of a backwards consisting of application that Shire was advocating. Basically, the district court, in applying consisting of, sort of did it backwards. It said, well, first, I'm going to look for any of those specified substances inside the granule. Right. And then, if I find one, I'm going to conclude that that substance must define the infringing inner lipophilic matrix. Right. What he should have been doing is saying, well, first, I'm going to identify the structure that is the inner lipophilic matrix. So he did it backwards, but his ultimate conclusion was he identified the inner lipophilic matrix, and it consisted of just that one thing, right? Actually, he first identified it as the granule structure, but then abandoned that. Right. If you look in J.A. 18 and 20 to 21, you can see his analysis is throughout the entire volume, throughout its whole volume, all volume of the granule structure. But somehow, that got disconnected, and he changed to it's just the magnesium stearate. And the problem there is that magnesium stearate isn't the structure itself. Magnesium stearate is a component of the structure. By his own claim construction, to look at a structure in all its volume, he had to take the entire structure, not just a piece of it. And the entire structure, he had to take the entire structure, what, for purposes of defining it as the lipophilic inner matrix? Right, because his definition of matrix was… But that included a lot of other stuff beyond the consisting of language in the claims, right? I'm sorry, what included? You're saying that he should have taken the whole granule as being the inner lipophilic matrix? Right, and he did for a while, yes. Okay, and he should have done that, but that has hydrophilic molecules, particles too, right? Right. That's not exclusively lipophilic. Right, and that's our point. You start with, what's the matrix? What's the structure that you say is the matrix? And he says that structure is a macroscopically homogeneous structure in all its volume. Okay. The granule is that. In fact, he said that several times. Okay. Then he said, but actually, now I'm just going to look at a part of that structure. He gave up on looking at all its volume. He said, I'm just going to look at some of its volume. Okay, well, so what would you say then? If you start with the granule as being the whole structure, then what would be your analysis? The granule meets his construction of a macroscopically homogeneous structure in all its volume. It's got the homogeneous distribution of both SSG and magnesium serrate, hydrophilic and lipophilic excipients in it. And therefore, you don't infringe. And therefore, we don't infringe. And actually, for reference to the specification, all of the interlipophilic matrices disclosed are granules. They're not pieces of granules. They're not some ingredients of granules, but not others. In fact, in describing the invention at Column 3, Line 31, inventors refer to these as the lipophilic matrix granules. In Column 4 at 14, inventors says these are the inert matrix granules. In Column 3 at 44 to 45, describes them as, quote, lipophilic granules. And what I'm suggesting is that the district court deviated from its own proper construction of a matrix requiring a structure in all its volume because it got sort of twisted up in a backwards consisting of analysis, where it started with looking for the ingredients and saying, well, if the ingredient's there, we must have this structure. Consisting of is what limits the universe of potential infringing interlipophilic matrices. It does not convert any one of those listed ingredients into an infringing matrix. Can I ask, just as a practical matter? Yes. There's a lot of discussion here about prosecution history of Stoffel and DeFranco, prior art. Because you raised on appeal the enablement and written description. Was validity, obviousness, or anticipation a matter that was raised in this case? No, it's not here. Not on record. Thank you, Mr. Maddox. Mr. Howe. Good morning, and if it pleases the court, welcome, Judge Hughes. Judge Middlebrooks down below took a lot of time on this case. He had a full Markman hearing, including Watson's expert testified at that hearing. We have a claim construction ruling in the case. Then we had a bench trial, five-day bench trial, and he made many, many fact findings. They all appear in his decision. Confusion. But, Mr. Howe, doesn't the matrix itself have to be lipophilic, not just have a lipophilic compound? I believe it does, and that's the confusion that Watson has created in this appeal. They equate granule with matrix. They just make that assumption throughout their briefing that the granule is the matrix, and therefore, let's just look inside the granule, and if we find something in the granule, which now they're saying is the matrix, that is not a lipophilic excipient, well, then that's outside the claim. And what does the district court do, though? The district court... He starts with the smallest component, and he says, if this is lipophilic, then the lipophilic matrix is satisfied, because this by itself is the inner lipophilic matrix. Is that a fair assessment of what the court said? Yes, and the judge found that that was magnesium stearate in the Watson product. But isn't there also... I mean, doesn't that give unbelievably broad scope to your patent? Because it's always... It's like saying a forest is a tree, or is comprised of trees, so therefore, if there's a tree in the middle of Manhattan, Manhattan is a forest, too. I mean, that can't be right. No, no.  Go ahead. No, because one tree does not make a forest, and one molecule of magnesium stearate found somewhere in a formulation does not make a matrix, not a lipophilic matrix, for sure. But what, then, did the district court say was sufficient to make a lipophilic matrix? How much lipophilia do you have to have to make a matrix? Enough so that you control the release of the active, which is the mesalamine, in this formulation. That is what it is. As a matter of fact, on page... It's JA-20, page 18 of the opinion. The judge wrote, what matters is the relationship between the excipients in different locations. He's talking about the... Where is that on the page? This is on JA-00020. It's page 18 of the opinion. Okay. So, if I'm understanding you correctly, in order for it to be an inner lipophilic matrix, there has to be enough of a lipophilic agent to make it operate in a lipophilic manner. Correct. What if there's enough of that lipophilic agent in the outer matrix that it also operates in a lipophilic manner? There's no evidence that when the magnesium stearate is outside, in this case of the granules, that it operates as a lipophilic agent at all. But the way that the district court did its claim construction and the way it looked at just saying it's lipophilic if it has a lipophilic agent, no matter if there's other things, and it's hydrophilic if it has a hydrophilic agent, no matter if there's other things, would seem to allow for that possibility though. No, because magnesium stearate has two functions. It has a release function when it's operating as a lipophilic agent and it also has a lubricating function when it's operating as a conventional lubricant. Similarly, the hydrophilic component, the starch glycolate, that also has two different functions. When it's inside the granule, it doesn't do anything. It's inside a granule, it doesn't do anything. When it's outside the granule in the extra granular space, as the judge writes in his opinion, now you have the red dots, as they're shown in our brief in the SEM photographs, you have the red dots, which represents the sodium starch glycolate molecules, and they're in a macroscopically homogeneous structure throughout the tablet. They interact with the green dots, which are inside these granules, which are the inner lipophilic matrix. It's a three-dimensional tablet, so you have millions of these molecules in this tablet in the end. And it's that interaction between the inner lipophilic matrix and the outer hydrophilic matrix that is controlling release of the mesalamine, in which, by the way, this is an atypical formulation, because it has 80 to 95 percent of actives. My understanding, if I would just listen to what you were saying here, is that the granule is the matrix. No, it's not. The granule, first of all, about 90 or 95 percent of the granule is mesalamine. Mesalamine is the active, which you're trying to control release of. Mesalamine, Watson agrees, is hydrophilic. So you can't have a granule that's 95 percent, let's say, mesalamine, which is hydrophilic, and then say it's lipophilic. Yeah, but that's a side issue. I mean, we're all excluding that from the calculation. Why? That's excluded from the claim language, right? Well, I think it should be excluded. It's not part of the matrix, for sure. It sounds like, then, that even though you oppose having the separate and distinct, that you agree that there has to be two different matrices. Correct. Separate? Yes. So you agree that they're separate, that they just don't have to be entirely distinct. Is that your position? Well, I think two things. Number one, they're separate because, by the claim itself, it says an inner and an outer. So we're talking about two different matrices, for sure. One is lipophilic, one is hydrophilic. They're separate, no question. Now, the word separate doesn't appear anywhere in the claims. That's why we say you shouldn't even read that word in there. It's already there. But distinct appears nowhere in the intrinsic record. What does distinct mean? They say it means physically and spatially separate, like rings around Saturn. Well, there's nothing in this patent, nothing in the intrinsic record that requires the matrices being distinct. So your claim construction allows some overlap. Absolutely. How much overlap? Is too much overlap to make them not separate anymore? Well, the overlap, I don't know, if your question means by overlap, mixing. If you mix, right? The specification itself in column three lines... Right in column one, excuse me, column one lines 48 to 52 is talking here about the background of the invention and the prior art, and right here they're talking about mixing hydrophilic materials into a lipophilic matrix. They're recognizing that that's already known in the art to do that. Now, how do you know how much is enough? Within the context of this claim, you have to be able to control the release of the methylamine and meet all of the other limitations in the claim. They're all important. Watson is only trying to focus on one limitation and pulling it out and saying in abstract, this is just too broad. Well, it's not too broad, and it has to be read in the context of the claim in its entirety and also in view of the rest of the intrinsic record. Mr. Howlett, your brief had this wonderful graphic of an outer matrix and an inner matrix, and the inner matrix had the little balls and the mesalamine was indeed dispersed throughout, but primarily within the little inner lipophilic matrices. Where do we see that kind of dual structure in the proof, which I guess was the pictures, your microscopic blow-ups? The only proof in the record was submitted by the patentees here, and they were scanning electron microscopy, EDX, there was Raman spectroscopy, there was dissolution tests, and then there was the expert testimony that explained all of that. Where do we see those two nicely separated matrices? It's not a graphical depiction. It is a photograph. That is real evidence of the real product. That is the Watson product, and by the way, they appealed, they have not challenged any of the factual findings down below on the testing, whether the testing was right, wrong, or not, and the judge's opinion has a lot of fact findings in it, and so they are all, they're not in dispute. And so those pictures clearly show that you have magnesium stearate in the granules as well as outside of these granules. You also have sodium starch glycolate, the red dots, in the granules as well as in the spaces in between the granules. And again, we're talking about maybe less than 5% of the excipients. It's 80 to 95% is mesalamine, so just picture a tablet, and it's got all of these granules in it. As a matter of fact, there's a very nice picture of an actual tablet on page 14 of the brief that you can see the white disks. Those are the granules that we're talking about. Within that granule, those many, many, many granules, there is magnesium stearate. Now, Watson took the position right from the beginning, well, we just add it as a conventional lubricant, so how can it be an inoliphophilic matrix? Well, that's what they said, but when we did all of this testing with the experts, the proof is in the pictures. The magnesium stearate went, migrated through pores, pores in the mesalamine, and got into the inside of the granules, and that scientific fact, coupled with fines being produced during the manufacturing process, where when they're granulating the mesalamine into granules, little pieces fall off. It's like sawdust. Those fines, that's mesalamine outside the granules, and then you also have the sodium starch glycolate in those intergranular spaces, and it's that combination of force between the inoliphophilic matrix and the outer hydrophilic matrix that controls release of mesalamine. So, I understand what you're saying, and let me just tell you what was troubling me here about the district court's opinion and the claim construction was that it seemed like the way the court did the claim construction and the way its opinion was written, all it did was identify some kind of interior portion and say there's a lipophilic element in it, and once there's one lipophilic, that's enough to be an interlipophilic matrix. And then it looked outside and said, well, there's that one hydrophilic element there, and that's enough for it to be a hydrophilic matrix. But that wouldn't necessarily operate in the same way that you're describing the way it should operate, just because there's one element. It could be, because obviously in this one, there's both and both. So, I'm struggling with how to confine the district court's claim construction to a proper articulation of the invention. I think it is confined because it has consisting of language which puts a boundary around what can be an interlipophilic matrix with a list of substances, magnesium stearate being one. And similarly, it does that with the hydrophilic matrix. I would also point to footnote 25 in the opinion, page 18, and here the judge, if I just read it quickly, he's referring here to evidence that he's relying on. This is now actual evidence by the experts who are opining on what's happening here with the Watson formulation. As explained by Dr. Cinco on cross-examination, excipients found in different locations within the tablet will play different roles. For example, the magnesium stearate located in the granules will have an effect on the release of the mesalamine, whereas magnesium stearate in the extra granular space will serve as the lubricant. I understand all this. The operation and the facts seem to suggest that it operates in the manner, but what I'm troubled with is the claim construction. It doesn't seem to me that the claim construction would rule out as infringing a completely homogenous one matrix thing that had some lipophilic and some hydrophilic elements, and you just draw circles wherever you want. Can you point to me where in the claim construction that would be ruled out? I take it you agree that that's clearly not covered by your patent. You, I think, excluded that during the prosecution history or the like. I think where it is is, first of all, it's in the construction of matrix, which is a macroscopically homogenous structure in all its volume. That term, that construction is not on appeal here, so that's agreed upon. It's a macroscopically homogenous structure. That takes away the one tree in Manhattan not being a forest. The tree is not homogenous. The inner matrix here is the granule? No, the inner lipophilic matrix are the magnesium stearate molecules that are located throughout these granules, and it's a three-dimensional structure. It is a distribution, if you will, of all the magnesium stearate molecules that, because of their spatial relationship to the sodium starch glycolate, which is similarly a distribution... Wait, wait, I don't mean to interrupt, but this is a very, very hard case for me, the science. You're saying that the magnesium stearate itself is the lipophilic matrix. Yes, and so did the... But how is that consistent with the language of the claim? On JA37, it says, an inner lipophilic matrix consists of substances wherein the active ingredient is dispersed both in the matrix and in the hydrophilic matrix. I mean, if the active ingredient of mesalamine isn't dispersed within the lipophilic matrix, which it isn't if it's only the magnesium stearate, then that's not consistent with this. I think when something is dispersed in something, that something is not part of what it's dispersed in. In other words, if mesalamine is dispersed in a matrix, it doesn't make mesalamine part of the matrix. That's the problem with saying granule equals matrix. The mesalamine is dispersed into the matrix. The matrix is this distribution. Again, you have to visualize, I think, a three-dimensional structure of magnesium stearate molecules that control release here, which is the essence of this invention. And the mesalamine is in that matrix. Similarly, the mesalamine is outside that matrix. It's also in the hydrophilic matrix. The part of mesalamine that's there are the fines, those very small particles of mesalamine that are created during the manufacturing process. That's what is happening in the Watson product. That's what's shown in the pictures, which are in evidence here. And it's also in the examples. I'm sorry if I'm being dense about this. Not at all. Going back to your agreement that the matrices have to be separate, how are they separate if you have little granules of, or little pieces of magnesium stearate that are in itself a lipid matrix, and I guess some other hydrophilic substance, and then the mesalamine is just dispersed around all of that. Where's the separation? The separation is because the magnesium stearate, when it's within a granule, it'll have a function then of help. It's part of the inter-lipophilic matrix only then, because it's helping to control release. When it's outside that granule, it has a different function. Just ignore it. Stay with the sodium starch glycolate. Here's what's confusing me, because you keep going back and forth between the granule and not. Why aren't you saying that the granule is the lipophilic matrix? Because it has the mesalamine with the magnesium stearate in enough measure to make the granule operate lipophilically, and then the outer stuff is the hydrophilic stuff with the fines of the product. Well, one, as a matter of claim construction, the word granule is nowhere to be found in the claims. It was never argued to be part of the claims. But why isn't... It's not necessary. It may not be that it's the granule. It doesn't have to be a granule, but that's a separate... Granules are separately identifiable. The invention is not limited to granules. In other words... I've been giving you way too long. No, no, I'm sorry. I'll sit down. The invention is not limited to granules. Someone could come up with a different way of making their formulation that doesn't granulate, and then they would argue, because you have to have a granule on the outside of the patent. Thank you very much. Mr. Howe. Mr. Maddox, you have three minutes. Thank you, Judge. First of all, with respect to your questions about where can I see these separate structures, our whole point is you can't, and if you look at our illustration on page 41, you see the distribution, which is undisputed, of the SSG and the magnesium stearate distributed all within the granules and also all outside the granules, all throughout the tablet. Our point is you can't start with one... But he says it acts differently in one place than it does in the other, and that distinction creates the matrix structure because it acts differently when it's in one place than in the other. Okay, yes. I heard you argue a lot of function today, and this is the same function that the district court said, I don't want to hear about in claim construction. This is an apparatus claim. We just want to look at the structures and the ingredients here. At JA4565, the district court slammed the door on us. Actually, function was part of one of our claim constructions on another term, on matrix, and the judge properly slammed the door on us, and we are here accepting his view, his construction of matrix, which is that macroscopically homogeneous structure in all its volume. I believe it was you, Judge Hughes. I apologize if I got which one. One of you was struggling with, well, if it's just magnesium stearate, where does misalamine come in if the structure is just magnesium stearate? That's one of the reasons why the structure, which is the matrix, is the granule, because magnesium stearate is dispersed in that granule. But if that's the case, if the granule is the inter-lipophilic structure, and then the outer stuff is the hydrophilic structure, then why doesn't that infringe? Because the patent doesn't claim all inter-lipophilic matrix. I'm sorry, all inter-lipophilic matrices. It claims only those inter-lipophilic matrices that consist of substances from the group consisting of and listing them, the exclusionary effect of consistency. But why isn't magnesium stearate included in that list? I understand you say you're only using it as a lubricant. I beg your pardon. Magnesium stearate, well, there is the disclaimer argument, but let's put that aside for one moment. I'm sorry, I should have been clear. And our granules contain hydrophilic SSG. That's the problem. But they also contain magnesium stearate. Right, but because the claim isn't to all inter-lipophilic matrices, just those consisting of, and then there's a list of lipophilic ingredients, the fact that this matrix has SSG... I think this gets back to what I was asking you before. Your construction of this is that the inter-lipophilic matrix can only contain lipophilic substances, and if it has any hydrophilic matrix, or hydrophilic ingredients... That violates it. Yeah. Yes, I have 13 seconds left. My colleague said something that I think capitalizes the problem here. He said there's consisting of, and that puts a boundary around what can be a lipophilic matrix. That's the problem. Consisting of doesn't make boundaries. Consisting of helps you sort out which lipophilic matrices are within the patent and which lipophilic matrices are not by looking at what they're made of. Consisting of does not put a boundary around anything. It helps you sort what's in and out. Thank you, Mr. Maddox. This is Ron. Hello, Ron.